# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

F I L E D

APR  5 2002

Phil Lombardi, Clerk
U.S. DISTRICT COURT

| | | |
|---|---|---|
| ROY C. JOHNSON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | |
| vs. | ) | No. 94-CV-39-H(M) |
| | ) | |
| | ) | |
| CITY OF TULSA, | ) | |
| | ) | |
| Defendant. | ) | |

## CONSENT DECREE

481

### TABLE OF CONTENTS

1.  INTRODUCTION ................................................................ 1
2.  DATA COLLECTION ........................................................ 3
3.  PUBLIC EDUCATION ....................................................... 4
4.  ASSIGNMENTS ............................................................... 5
5.  RECRUITING .................................................................. 7
6.  PROMOTIONS ................................................................. 8
7.  PROMOTION PROCEDURES ............................................ 9
8.  SUPERVISORS ................................................................ 10
9.  BOC ............................................................................... 10
10. DISCIPLINE ................................................................... 10
11. TRAINING CURRICULUM .............................................. 11
12. RETALIATION ................................................................ 13
13. BACKING ....................................................................... 14
14. EVALUATIONS ............................................................... 15
15. ELIMINATING RACIAL BIAS IN POLICING ..................... 15
16. PARTNERSHIP IN POLICING .......................................... 16
17. COMPLAINT PROCESS ................................................... 17
18. FTO TRAINING ............................................................... 19
19. SCHEDULE ..................................................................... 20
20. DISPUTE AVOIDANCE AND RESOLUTION COMMITTEE:
    COMPOSITION OF THE COMMITTEE ............................. 20
21. OBJECTIVE OF THE COMMITTEE .................................. 20
22. ORGANIZATION OF THE COMMITTEE ........................... 21
23. PLANS AND POLICIES ................................................... 21
24. ISSUES RELATING TO COMPLIANCE ............................ 22
25. COMPLIANCE MONITOR ............................................... 22

26.    REPORTING BY THE CITY ................................................................ 24

27.    INDIVIDUAL REMEDIES ................................................................ 29

28.    REMEDIES FOR DENIAL OF PROMOTIONS ................................ 30

29.    ALL OTHER CLAIMS ...................................................................... 30

30.    ATTORNEY FEES FOR INDIVIDUAL CLAIMS ............................ 31

31.    RETENTION OF JURISDICTION .................................................. 31

32.    SEVERABILITY ................................................................................ 32

33.    MODIFICATIONS ............................................................................ 33

34.    DEFENSE OF THE DECREE .......................................................... 33

35.    NOTICE ............................................................................................ 33

# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **ROY C. JOHNSON, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| | ) | |
| **vs.** | ) | **No. 94-CV-39-H(M)** |
| | ) | |
| | ) | |
| **CITY OF TULSA,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## CONSENT DECREE

**1.    INTRODUCTION**

1.1    This Consent Decree follows extensive efforts by the Parties to both discover the facts

and to find a resolution of their differences.  The process which gave rise to this

Consent Decree began with settlement discussions before United States Magistrate

Judge, now District Judge Claire Eagan with the assistance of the Honorable Carlos

Chappelle, Pam Butler and Pat Cremin.  The Parties express their appreciation for the

valuable contribution which these individuals made to reaching the agreement which

resulted in this Consent Decree.

1.2    United States District Judge Sven Erik Holmes assumed the task of finding a voluntary

resolution of this matter and assisted the Parties in furthering the work which gave rise

to the agreement which resulted in this voluntary resolution. The Parties express their appreciation for the valuable contribution which Judge Holmes made to reaching the agreement which resulted in this Consent Decree.

1.3     United States Senior District Judge Lee West of the Western District of Oklahoma took on the role of settlement judge and assumed the task of assisting the Parties in their efforts to find agreement after discovery was complete. The Parties express their appreciation for the valuable contribution which Judge West made to reaching the agreement which resulted in this Consent Decree.

1.4     Neither the agreement to enter into this Decree nor the Decree itself shall constitute or be construed as an acknowledgment, agreement, admission, statement or evidence that the policies, practices, or procedures of the City prior to entering of this Decree were inadequate, unconstitutional or otherwise unlawful or constituted deliberate indifference by the City to the rights of any individual.   Similarly, neither the agreement to enter into this Decree nor the Decree itself shall constitute or be construed as an acknowledgment, agreement, admission, statement or evidence that the claims of the plaintiffs lack merit or could not be proven by evidence submitted at trial. It is instead a recognition by the Parties that the most constructive and effective response to this matter is to commit their mutual energies to achieving the high quality best practices and procedures of police management which are incorporated into this Decree.

2.    **DATA COLLECTION**

2.1    The Police Department shall implement and maintain for those periods of time set forth in the present collective bargaining agreement between the City of Tulsa and the Fraternal Order of Police or, in the absence of a provision addressing such data, for a period of time no less than that required by law, a data collection system. This system will collect data in a manner which allows it to be analyzed according to individual, squad, shift, division, and individuals in the chain of command.   The data collected shall include:

   a.    Officer's name; date of birth; race; gender; assignment; and individuals in the chain of command;

   b.    All training received by the officer;

   c.    Performance ratings on the yearly evaluations;

   d.    Commendations and other indicia of positive performance;

   e.    Promotions;

   f.    All complaints and their resolution, including counseling;

   g.    All supervisor contact reports;

   h.    Field interview reports;

   i.    Pedestrian stops;

   j.    Traffic citations;

   k.    Traffic contact reports;

   l.    Arrests;

    m.    Search and seizure reports;[1]

    n.    Civil suits alleging officer misconduct;

    o.    Use of force reports.

2.2    All officers shall be required to submit a written report each time an officer uses deadly force; uses OC Spray; uses physical control holds; uses an impact weapon; or a canine bite is inflicted.

2.3    This data collection system shall be implemented pursuant to the following schedule:

    a.    Phase One.  Six months after the entry of this Decree, the City shall have secured and have in place the necessary hardware.

    b.    Phase Two.  Twelve months after the entry of this Decree, the City shall have the necessary personnel in place, forms designed and the system in operation.

    c.    Phase Three.  Within eighteen months of the entry of this Decree, the City shall generate the data required by this Decree.

## 3.    PUBLIC EDUCATION

3.1    To advance public support for this order and the operations of the Tulsa Police Department, the Department shall develop a Public Education Plan (Education Plan). The Education Plan shall be directed at informing individuals, organizations and the general public about the Decree and the benefits to this City and its police department.

---

[1]    Whenever there is a search a report will be filed setting out the basis for the search, whether the search was by consent or the facts supporting the search and the scope of the search, including the persons and/or places searched.  A separate report would not be needed where the search is made incident to an arrest and the required information is included in the arrest report.

3.2    The Education Plan shall further educate the public concerning the proper police function and proper police procedures; the right of citizens to refuse requests for consent to search; the conduct which a citizen should expect from an officer; how to file a complaint against police officers, and how to pursue complaints which are filed. The Education Plan shall include provision for the use of television spots, community meetings, presentations at schools, and brochures which shall be made available throughout the community.

3.3    The Police Department shall assign a sergeant to work to implement this plan.

**4.    ASSIGNMENTS**

4.1    All assignments shall be made on the basis of merit.

4.2    The Police Department has adopted a process for making specialty assignments which provides for the posting in each division and upon the City's intranet all openings in specialty assignments. These postings are to include but are not limited to the specific assignment, the job description, minimum qualifications of that assignment and preferred qualifications.  This process shall continue.

4.3    An officer shall be required to receive one day of training in basic investigation which shall include report writing, search warrants and case management, as a prerequisite to applying for a position as a Detective, SID, Investigator, and Street Crimes. This time shall count toward meeting annual in service elective requirements.

4.4    In each division, the Major shall be charged with accepting all applications for specialty assignments and for making recommendations to the Deputy Chief. The

Deputy Chief shall forward the Major's recommendation to the Chief, with the Deputy Chief's own recommendation to approve or reject the Major's recommendation. All applicants shall be notified of the final decision.

4.5     Policy shall be adopted and implemented prohibiting those in the chain of command of positions being filled from recruiting persons to apply for a specialty assignment other than through the announcement provided in Paragraph 4.2. Should no one apply for an assignment during the period open for submitting applications, a period which shall be no less than three weeks, the Major or others may then take steps to secure qualified persons to serve in the open position.

4.6     The established minimal requirements for all positions shall be reviewed by the Department to assure that those requirements directly relate to the requirements of the position.

4.7     With the following exception, the established minimal qualifications for positions shall not be waived. If no one who meets the minimal qualifications for a position applies for an open position, the Department may open the position to all applicants and select the most qualified person for the position.

4.8     It is stipulated that African-American officers have not been assigned to specialty units and have not served on Department committees to the degree desired by the parties. One objective of this decree is to increase the number of African-American officers

assigned to specialty units and serving on Department committees. It is agreed that fairly implemented by the parties, the provisions of this Decree will achieve this objective without racial preferences.

4.9    The City shall organize at the Academy, a Recruiting and Career Development Section under the supervision of a sergeant assisted by a corporal. This office shall be charged with consulting with supervisors and commanders of specialty units; identifying informal training opportunities; and acquainting themselves with the requirements of all specialty positions. Upon request of an officer, this section shall assist the requesting officer in developing a career plan which reflects the officer's individual career goals. The career plan shall specify assignments and training which are needed by the officer to achieve these goals. The sergeant in charge of this section shall serve as both an advisor and an advocate for officers in achieving their career plans and shall be an ex-officio member of the Training Committee. The Recruitment and Career Development Section shall further have the duty of insuring that all officers seeking promotion are kept informed of the testing procedures, the scope of the subjects to be tested or the materials from which the test questions are drawn. This includes those officers on leave who have notified the Recruiting and Career Development Section how they can be contacted.

## 5.    RECRUITING

5.1    All hiring shall be based on merit.

5.2     All recruiters shall be assigned to the Recruiting and Career Development Section. This section shall also oversee background investigations.  These duties shall include preparing an annual recruiting plan to be reviewed by the recruiting task force and submitted to the Chief.

5.3     The Department shall establish a recruiting task force, which shall twice a year evaluate the recruiting methods and strategies employed and advise the Chief on an ongoing basis as to needed improvements in the Department's recruiting including the recruitment of women and minorities.

5.4     The process for screening applicants shall be standardized and the criteria shall be limited to the requirements of police work.  Screening board members shall be trained in valid interviewing and selection methods. [2]

5.5     In order to attract and retain applicants, temporary employment opportunities of up to six months in duration shall be made available to persons accepted to the Academy.

**6.     PROMOTIONS**

6.1     All promotions shall be based on merit.

6.2     Except as otherwise provided herein, the promotion examination process which is presently in place shall remain in place throughout the term of this Agreement.  Should the City desire to amend that process, in addition to meeting any other requirements

---

[2]      This training shall be a version of the training provided to oral board members brought in for promotion exams.

placed upon the City by the City Charter and the Collective Bargaining Agreement, all

proposed modifications shall be independently validated.

6.3     The City shall conduct a man power review according to accepted standards in order

to determine the need for additional personnel and evaluate the need for an additional

uniform division.  This study shall be completed within eighteen (18) months of the

entry of this Decree.  The decision of whether to implement these findings shall be at

the sole discretion of the City.

## 7.     PROMOTION PROCEDURES

7.1     The following testing procedures for promotion shall be implemented:

a.      It is acknowledged that the present promotional process has been validated and

is not being challenged;

b.      Promotion exams or components of exams prepared by the City's selected

testing agency shall not be provided to the TPD or to any City official in

advance of the administration of the test or any component of the test;

c.      The City shall adopt and implement a policy which prohibits all officers from

attempting to discover or from disclosing the oral board scenarios used during

an exam; and

d.      The City shall adopt and implement a policy which limits discussions with oral

board members to a member of the Police Department, who shall be either the

Chief, a deputy chief, or major and/or a representative of the Human Resources

Division.  Their presentations shall be limited to discussions concerning an

overview of the organization of the Department; job functions of the position being filled; and the promotion process. Prior to the oral board reporting its findings, there shall be no mention by anyone of any individuals who will appear before the oral board.

## 8. SUPERVISORS

8.1  The City shall assure that all supervisors enjoy all of the rights and privileges which come with their rank.

## 9. BOC

9.1  The City recognizes the Black Officers' Coalition (BOC) as:

    a.    A professional community service organization which is an asset to the TPD and the City; and,

    b.    A professional support group to black officers in the TPD.

9.2  As a part of APO academy instruction, the City shall include at least one hour in which representatives of the plaintiff class selected by the BOC will instruct APOs concerning community resources and issues subject to the submission and approval of a course outline.

## 10. DISCIPLINE

10.1  The City shall reorganize the Internal Affairs Division into two squads. The current internal affairs function shall be assigned to a new Investigations Squad charged with conducting investigations of complaints. A second squad, the Audit and Inspections Squad, shall be charged with assuring that the Department is operating consistent with

the Department's policies.  It shall conduct such investigations and audits of the Department's data as necessary to meet this charge.

10.2  This division shall be under command of a captain, but within two years, the City shall reassess this position to determine if the assignment of a major to command the Internal Affairs Division is warranted.

10.3  The City shall adopt and implement policies and procedures to assure that all stages of the disciplinary process are free from racial and or gender discrimination, including:

    a.    the initiation of a disciplinary investigation;

    b.    the decision to bring disciplinary charges;

    c.    the resolution of a disciplinary action; and

    d.    the punishment given to an officer found to have violated a Department regulation/policy.

10.4  Whenever counseling is used by a supervisor with the intent of disciplining the subordinate, the counseling shall be documented.

**11.  TRAINING CURRICULUM**

11.1  The City shall review Academy training and in-service curriculum to assure Department training supports the objectives of the Court's order to unite the Department and to unite the community. The City shall prepare a report setting out its findings and the steps taken to implement them.

11.2  All instructors at the Tulsa Police Academy shall receive particular training in the policy changes set forth herein, this will particularly include the Department's policy

promoting a partnership between police officers and citizens in order to promote proactive problem solving between the police, other government agencies and the community.

11.3    The Academy curriculum shall prohibit derogatory characterization of North Tulsa, including references to North Tulsa as a "war zone," or "hunting ground."

11.4    Training curriculum for supervisors shall be developed to train all supervisors in use of the tools which are necessary to achieve the objectives of the Court's order. This training shall include training in: evaluation of officers and other supervisors; monitoring and deterring racial or gender bias; misconduct and retaliation under their command; creating a partnership in policing; accessing community resources; and, recognizing current community issues.

11.5    The City shall secure handguns which will facilitate Apprentice Police Officers qualifying on the firing range.

11.6    An APO who fails to pass the Geography test shall be offered three hours of remedial training and allowed to test again.

11.7    Qualification in firearms shall be required at week sixteen of the Academy and cadets who fail to pass shall be offered remedial instruction and required to qualify before the conclusion of the Academy.

11.8    APO's shall be required to pass the firearm requirements of the Council for Law Enforcement Education and Training (CLEET) and the test given to officers to re-qualify annually.

## 12.    RETALIATION

12.1    The City shall adopt and implement a policy consistent with First Amendment law which forbids all forms of retaliation directed at any officer or civilian raising matters of public concern including but not limited to  claims of racial, gender, religious, or national origin discrimination or other rights conferred by the Constitution and laws of the United States, Constitution and laws of the State of Oklahoma, or this Decree. The right to be free from retaliation shall include those who assert such matters on behalf of others.  It shall not include protection for those who raise issues of personal interest.  The policy shall further forbid any form of retaliation against any officer or civilian who participates in any fashion in assisting a person bringing a complaint alleging that their rights have been violated.

12.2    This policy shall recognize the interest of the City in encouraging all employees to bring such matters through the chain of command or directly to the Chief of Police or Mayor and the right of all those who raise matters in this manner to the same protection from retaliation as provided for in the prior paragraph.

12.3    This policy shall define retaliation as being an action motivated by a desire to punish a person for the exercise of the above described rights which alters the terms and conditions of employment, including but not limited to  giving unfair evaluations;

initiating a disciplinary action; giving excessive punishment for a disciplinary infraction; failing to back or assist another officer; or giving unfavorable assignments.[3]

12.4    The anti-retaliation policy shall also provide for appropriate disciplinary action for any supervisor who upon receiving written notice of specific acts of retaliation against any officer under their command, fails to investigate and take appropriate corrective action. This policy shall require that persons in the chain of command are held accountable for eliminating retaliation directed at any officer under their command.

12.5    The City shall provide for the recording of all broadcasts on the dynamic channel and the periodic review of those broadcasts in order to assure that the channel is used exclusively for authorized police business.

## 13.    BACKING

13.1    The City shall adopt and implement a policy which specifically sets out the obligation of officers to provide backing to their fellow officers and establishes procedures for officers to inform supervisors in writing of specific problems which they are experiencing in receiving backing.  When a supervisor receives notice of such problems, he shall be required to investigate the complaint, take appropriate action and report the notice and all actions taken up the chain of command.

---

[3]    This limits retaliation to changing the terms and conditions of employment and does not extend it to the trivial.

**14.    EVALUATIONS**

14.1    The City shall adopt and implement a policy providing officers who conclude that a cumulative rating of unsatisfactory or lower on their evaluation is unfair, the right to appeal either through their chain of command or where appropriate through the appeal process contained in the City's discrimination policy.

**15.    ELIMINATING RACIAL BIAS IN POLICING**

15.1    It shall be the written policy and the practice of the City of Tulsa that there shall be no racial bias in the operations of the Tulsa Police Department. The policy shall set out the City's commitment to unbiased policing, clarify the circumstances in which race/ethnicity can be considered when making law enforcement decisions, and reinforce procedures that serve to assure the public that the Department is providing service and enforcing laws in a fair and equitable manner. Investigative detentions, traffic stops, pedestrian stops, searches and seizures of property by officers will be based on a standard of reasonable suspicion or probable cause as required by the Fourth Amendment of the U. S. Constitution. Officers must be able to articulate facts and circumstances which support probable cause or reasonable suspicion for an investigative detention, traffic stop, arrest, non-consensual search, and seizure of property. Except as provided below, officers shall not consider race, ethnicity, or national origin in establishing either reasonable suspicion or probable cause. Officers may take into account the reported race, ethnicity, or national origin of a specific

suspect based only on credible, reliable, information that links a person or persons of a specific race/ethnicity to a particular criminal incident.

15.2   The City of Tulsa shall also adopt and implement policies which will serve to reduce perceptions of racial bias when detaining a pedestrian or motorist. The policy shall require officers to:

a.   Be courteous, polite, and professional.

b.   Introduce themselves and before asking the citizen for identification, explain to the citizen the reason for the stop as soon as practical. This procedure shall be followed unless doing so will compromise the safety of officers or other persons.

c.   Ensure the length of detention is no longer than necessary to take appropriate action for the known or suspected offense.

d.   Answer any questions the citizen might have, including explaining options for the disposition of the traffic citation, if relevant.

e.   Provide the officer's business card with name and badge number.

f.   Apologize and/or explain if it is determined that the reasonable suspicions were unfounded.

## 16.   PARTNERSHIP IN POLICING

16.1   The City shall adopt and implement specific policies consistent with nationally recognized best practices requiring police practices which promote the creation of a partnership between police officers and citizens in order to provide for proactive

problem solving between the police, individual citizens, other government agencies and the community.

## 17.   COMPLAINT PROCESS

17.1   Complaint policies and procedures shall be amended to provide the following:

     a.     Complainants may initiate a complaint against an officer either in person, by telephone, mail or fax;

     b.     Complainants may file an anonymous verbal or written complaint; and

     c.     When a complainant is unable or declines to complete a complaint form, the officer taking the complaint shall complete the form and sign it as setting out the complaint as related to him by the citizen.

17.2   Officers shall be permitted to report misconduct of other officers directly to the Chief.

17.3   When a supervisor is called to respond to a complaint or concern of a citizen, the supervisor shall be charged with documenting the complaint or concern and file a written report concerning the matter and the resolution of the complaint. These shall be forwarded through the chain of command and copies maintained in the Internal Affairs Division.[4] Each person in the chain of command shall be obligated to assure that such complaints were handled appropriately.

---

[4]     This does not require that I.A. go back over a matter which has already been resolved by a supervisor. An example of the use of these reports would be an instance where an officer is found to have been rude to a citizen, if these supervisor contact sheets reveal that the supervisor has repeatedly been called by citizens because of such problems, the supervisor might also have an issue for which he needed to be held accountable.

17.4    In all Department level or Division level investigations directed by the Chief, all interviews of complainants, officers and witnesses shall be taped and transcribed. These tapes shall be maintained in the investigation file.

17.5    All investigations shall assess the propriety of all TPD conduct during the incident it investigates, including the actions taken by all persons in the officer's chain of command.   Investigation reports shall reflect findings as to any and all TPD misconduct including that of persons in the chain of command.

17.6    There shall be no automatic preference of an officer's statement over a complainant's statement in investigations. Credibility determinations shall include, but not be limited to consideration of the officer's history of complaints and disciplinary records and the complainant's criminal history for crimes involving truth and veracity.   Such credibility determinations shall be explained fully in the investigative report.

17.7    Investigations of complaints of racial discrimination, use of force, or harassment shall not be closed without rendering a disposition and appropriate discipline because the complainant withdraws the complaint or is unavailable to give a statement.   Such complaints shall be investigated to the fullest extent possible to determine whether the complaint is corroborated and the circumstances which lead to the withdrawal of the complaint.

17.8    The City shall adopt and implement a policy providing that if within a three year period the Police Department receives three requests to withdraw complaints against any officer, upon receipt of the third request, the City shall refuse that request and

proceed to investigate fully the present complaint as well as those which have been withdrawn.

17.9   The Internal Affairs Division shall be staffed sufficiently to assure that the obligations under this Decree are met. Internal Affairs shall have the equipment, materials and resources needed to thoroughly conduct investigations.

17.10  While assigned to Internal Affairs, investigators shall not be members of the Special Operations Team (SOT).

## 18.   FTO TRAINING

18.1   The City shall develop and implement policies to govern the selection and removal of FTO's. Officers serving as FTO's shall have a minimum of five years experience on the Department and have been trained in Partnership in Policing. The City shall adopt valid criteria for the selection and evaluation of FTO's which shall include evaluation of their ability to foster partnerships in policing. Officers who fail to maintain evaluations rating them as exceeding expectations, shall be removed as FTO's.

18.2   The City shall increase supervision of field training. These steps shall include strengthening the evaluation process for FTO's. APO's, FTO supervisors, and FTO peers shall be required to evaluate FTO's. The evaluations of FTO's by APO's shall be guaranteed confidentiality.

18.3   Officers who use racial or gender related epithets or demonstrate racial or gender bias in their job performance shall be disqualified from serving as FTO's.

**19.    SCHEDULE**

19.1    Except as otherwise specifically indicated, the City shall implement all provisions of

this Decree within ninety (90) days of the Courts entry of this Decree as an order of

the Court.

**20.    DISPUTE AVOIDANCE AND RESOLUTION COMMITTEE
         COMPOSITION OF THE COMMITTEE**

20.1    There shall be established as an agency of the Court a Dispute Avoidance and

Resolution Committee (Committee) composed of seven members, three of whom shall

be selected by the Court from lists of citizens proposed by the parties, two members

of the Plaintiff Class selected by the Plaintiffs and two senior members of the Police

Department selected by the City.  Should the FOP endorse the Agreement and adopt

its objectives by a resolution of its members presented to the Court, the Committee

shall be expanded to nine, two of whom shall be members of the FOP and chosen by

the FOP.

**21.    OBJECTIVE OF THE COMMITTEE**

21.1    The objective of the Committee will be to provide the parties an opportunity to discuss

issues concerning the requirements of this Decree, assist the parties in avoiding future

litigation over these matters, and assist in the resolution of issues relevant to this

Decree.  The Committee shall only have the duties, responsibilities and authority

conferred by this Decree.  The Committee is not authorized to make policy and shall

not issue orders or directions to any Party or any agent, representative or employee of

the City. This Committee shall assist the Parties in making the changes and resolving issues related to the policies and practices required by this Decree. When called upon to do so, the Committee shall address disputes over compliance  acting as an alternative dispute resolution tool pursuant to the local rules of the United States District Court for the Northern District of Oklahoma.  Committee members shall be required to participate in proceedings of the Committee in good faith, openly discussing issues and seeking ways in which any differences can be resolved.  All processes of the Committee shall be non-binding and not based upon voting majorities.

## 22.   ORGANIZATION OF THE COMMITTEE

22.1   To accomplish its objectives the Committee shall be organized as follows:

    a.   The Committee shall elect a chairperson from the members appointed by the Court, who shall call meetings and chair those meetings.  The Committee shall also select a vice-chair from its members who shall serve in the absence of the chairperson.

    b.   The Chair and Vice Chair shall serve for two year terms and may not be re-elected.

    c.   The Committee shall meet regularly to hear reports of the parties and their representatives concerning the issues relevant to this Decree.

## 23.   PLANS AND POLICIES

23.1   In advance of the adoption of the plans and policies called for herein, the City shall present to the Committee drafts of those plans and policies in order to receive the

views of the Committee and inform the City of issues which might arise concerning such matters.

**24.   ISSUES RELATING TO COMPLIANCE**

24.1   All compliance reports addressed herein shall be presented to the Committee members in order that they are kept informed concerning the status of compliance and issues related there to. Any member of the Committee may have placed on the Committee's agenda any issue relating to compliance with the Decree.

24.2   In the event Plaintiffs contend the City has failed to fulfill any obligation under this Agreement, Plaintiffs shall, prior to initiating any court proceeding to remedy such contention, give written notice of the failure to the City and the Committee. The City shall have 45 days from receipt of such notice to resolve the issue through the Committee or otherwise. Upon good cause shown, the Court may hear such a matter on an expedited basis, prior to review of the matter by the Committee.

**25.   COMPLIANCE MONITOR**

25.1   Within ninety days of the entry of this Decree, the parties shall meet and select a person to serve as compliance monitor. If the parties are unable to agree on the Monitor, the parties shall submit two names, along with resumes or curricula vitae and cost proposals to the Court, and the Court shall appoint the Monitor from among the names submitted. The City shall bear the cost of the Monitor which shall not exceed $36,000.

25.2   The Monitor shall have senior management experience and such other experience as the Court finds appropriate, but may not be a present or former employee of the City.

25.3   The Monitor shall only have the duties, responsibilities and authority conferred by this Agreement.  The Monitor shall not, and is not intended to, replace or take over the role or duties of the Mayor, City Council or Chief of Police.

25.4   The Monitor shall be an agent of the Court.  The Monitor is not a state or local agency, or an agent thereof, and the records maintained by the Monitor shall not be deemed public records.  The Monitor shall be independent and shall not accept employment or provide consulting services that would present a conflict of interest with the Monitor's responsibilities under this Agreement, including being retained (on a paid or unpaid basis) by any current or future litigant or claimant, or such litigant's or claimant's attorney, in connection with a claim or suit against the City or its officers, agents or employees or on behalf of the City, its officers, agents or employees..

25.5   The Monitor shall report three times a year as to the City's compliance with this Decree.

25.6   The Monitor shall not issue statements or make findings with regard to any act or omission of the City or its agents, representatives or employees except as required by the terms of this Decree, during a proceeding in this case or as might otherwise be required by the Court.  The Monitor may testify in an action brought by one of the parties to enforce this Agreement regarding any matter relating to the implementation, enforcement or dissolution of the Agreement.  The Monitor shall not testify in any

other litigation or proceeding with regard to any act or omission of the City or any of its agents, representatives or employees related to this Agreement or regarding any matter or subject that the Monitor may have received knowledge of as a result of his or her performance under this Agreement.

25.7   Allegations by the Plaintiffs of non-compliance shall be presented to the Monitor. The Monitor shall have an opportunity to investigate such allegations before they are heard by the Court. Except as might be ordered by the Court, the decision as to whether to investigate such allegations and the scope of any such investigation shall be made at the sole discretion of the Monitor. All investigations of the Monitor shall be limited by the scope of this Decree and subject to the orders of the Court. Upon good cause shown, the Court may hear such a matter on an expedited basis, prior to review by the Monitor.

25.8   Any finding by the Monitor of compliance or non-compliance, if objected to by a party, shall have a de novo review by the Court.

## 26.   REPORTING BY THE CITY

26.1   Ninety days following the entry of this Decree, and three times a year thereafter until the termination of the Court's jurisdiction, the City shall file with the Court, and serve upon the Monitor, the Committee, and Plaintiffs' counsel, a status report delineating the steps taken during the reporting period to comply with this Decree. The City shall state whether any formal audits or reviews, which relate to the subject matters addressed by this Decree have been performed and a summary of the relevant findings

of those audits or reviews.  This disclosure of formal audits and reviews does not include reports of the Court's Monitor or reports of non-testifying experts retained by the City Attorney's office pursuant to Rule 26.b.4. the Federal Rules of Civil Procedure.

26.2   The City shall maintain the records necessary to document its compliance with the terms of this Decree.  The City shall also maintain the records required by or developed under this Decree.

26.3   The Monitor shall have access to all documents, data and information relating to the City's implementation of this Decree.  This shall include copies of documents and databases.  The Monitor, upon reasonable notice to the City, shall also have access to all staff and facilities as necessary to monitor compliance with the terms of this Decree.

26.4   Counsel for the Plaintiffs shall have access to documents and data relating to the implementation of this Decree under the following terms:

   a.   Computerized databases collected or organized under Paragraph A. shall be routinely provided to counsel under a schedule to be agreed to by the Parties. If the Parties are unable to agree, the Court will establish the schedule.

   b.   Annual report of the Internal Affairs Division, biannual evaluation of recruiting required in Paragraph 5.3, manpower review required by Paragraph 6.3, report required by Paragraph 11.1, report required by Paragraph 15.3, and documents

provided to the Committee pursuant to Paragraph 23.1 shall be provided when completed.

c.      Annual duty roster shall be provided following shift change.

d.      A list of all officers with their race noted shall be provided with the duty roster.

e.      A list of Field Training Officers and Field Training Supervisors shall also be provided with the duty roster.

f.      Committee assignments when made.

g.      The minutes and reports of all Police Department Committees including the Shooting and Review Board and the Pursuit Board.

h.      Training curriculum for the Academy and in service training shall be provided annually.

i.      At the time that an Academy class is chosen the City will provide the list of candidates submitted to the Chief, their race and whether they were chosen or not. For those candidates not chosen, the reason for rejection shall be noted. The reasons for the rejection of candidates shall be specifically covered by the protective order provided for in Paragraph 26.8.

j.      When issued, the City will provide Plaintiff's counsel copies of the Chief decision on all grievances; arbitration decisions and Civil Service Commission decisions.

k.      When issued, the City will provide all affirmative action reports prepared by the City relating to the Police Department.

l.    Current policies and procedures of the Police Department,   relevant City

      policies and procedures, and an organization chart for the Police Department

      shall be provided upon the filing of this Decree and updated to keep current.

m.    Personnel action forms transferring or reassigning officers, orders granting or

      denying discipline, granting or denying promotions shall be provided monthly.

n.    Division orders transferring or reassigning officers within the divisions shall be

      provided monthly.

o.    The Internal Affairs Division shall continue the practice of reporting the

      number of complaints filed; the race of complainants, when known; the race of

      officers, investigations initiated, and the investigations completed.

p.    The City will provide the monthly crime statistic reports.

q.    The City will maintain and make available to Plaintiffs' counsel access to the

      following documents upon request: personnel orders not specifically referenced

      herein; documents relating to the counseling of officers; all Internal Affairs

      investigations; awards and commendations given to officers; documentation the

      informal resolution of citizen complaints; run in reports; after action reports;

      and all documents referenced in Paragraph 26.2.

r.    Plaintiffs may request the Court to grant under such terms as the Court finds

      appropriate access to any other document or class of documents which are

      relevant to determining the City's compliance with this Decree.

26.5   Counsel for the Plaintiffs shall have access to personnel and facilities under the following terms:

    a.    The City shall provide Plaintiffs' counsel quarterly access to police facilities.

    b.    The Plaintiffs can seek access to City personnel through the City Attorney's Office and if unsuccessful, by application filed with the Court.

26.6   It shall be responsibility of the City Attorney to provide to Plaintiffs' Counsel and the Monitor the documents, data and other access set forth in this Decree.

26.7   Plaintiffs shall have the right to share with Class Counsel information relevant to compliance with this Decree available to them over the Department's intranet.

26.8   The Court shall enter a protective order requiring plaintiffs, their counsel, members of the Committee and the Monitor to maintain information relating to personnel records; police sources and methods; and ongoing investigations discovered as a result of this action in a confidential manner.

26.9   Should the City withhold any document, data, or other information otherwise required to be produced by this Decree, on the basis that it is privileged or otherwise subject to protection by th e Court, the City shall provide the Monitor and Plaintiffs a description of the nature of the document, data, or information withheld in a manner that, without revealing the information itself, will enable the Monitor and Plaintiffs to assess the applicability of the privilege or protection claimed.   The Court will resolve any disputes over such claims.

## 27.   INDIVIDUAL REMEDIES

27.1   Except as otherwise provided herein, any class member who wishes to assert an individual claim of race discrimination, retaliation, or harassment in employment arising before August 1, 2001 may do so by filing with the Court a sworn, detailed statement of claim(s) within sixty (60) days of final trial court approval of the Court's entry of this Decree. Such statement shall, at a minimum, set forth the specific facts upon which it is based, the date of each challenged occurrence, the identity, address and telephone number of all known witnesses and documentary evidence, and the specific monetary harm claimed. Copies of all such documents shall be attached to the claim. An answer shall be filed within thirty days of the claim filing setting forth the specific facts upon which it is based, the identity, and the address and telephone number of all known witnesses and documentary evidence. Copies of all such documents shall be attached to the claim. Reasonable limited and expedited discovery shall be allowed. Claims which are not resolved by agreement shall be heard and ruled upon by a magistrate appointed by the Court. The claimant retains the burden of proof. The City retains its legal and factual defenses. Motions to dismiss and for complete or partial summary judgment are permitted by either the claimant or defendant. There shall be no appeal from a decision of the magistrate.

27.2   Any class member claims of racial discrimination, retaliation or harassment in employment not timely filed as set forth above are waived.

Case 4:94-cv-00039-TCK-FHM   Document 481 Filed in USDC ND/OK on 04/05/02   Page 33 of 39

Page 30 of 36

## 28.   REMEDIES FOR DENIAL OF PROMOTIONS

28.1    Claimants who are found to have been denied a promotion shall be entitled to all Title VII relief where justified by the evidence, law and equities.  The total amount of back pay for all claimants for claims of a discriminatory denial of promotion shall be limited to $200,000.  Punitive damages shall not be sought or awarded.

28.2    In addition to the judgments allowed for back pay, Claimants upon appropriate proof shall also be entitled to judgements for front pay to be determined by the Magistrate based upon the proof before him.  These judgments shall not be counted against the limitation set forth in Paragraph 28.1.

28.3    In order to assure the fair distribution of awards and assure that the limit of the awards provided for in Paragraph 28.1 is not exceeded, the Magistrate will reach an initial determination regarding each such claim.  Should the total amount of the initial determinations exceed the above provided limit, the Magistrate in entering judgements shall make such adjustments as the equities dictate.

## 29.   ALL OTHER CLAIMS

29.1    In all other individual claims of race discrimination, retaliation or harassment in employment, with the exception of the claim of Dean Finley for wrongful discharge, the claimant shall be entitled to compensatory damages, including lost wages to an award of up to $10,000 where justified by the evidence, law and equities.  Punitive damages shall not be sought or awarded.

29.2   Upon proof of wrongful discharge, Dean Finley shall be entitled to compensatory

damages and lost wages up to $150,000 and all other Title VII relief justified by the

evidence, law and equities.

## 30.   ATTORNEY FEES FOR INDIVIDUAL CLAIMS

30.1   A prevailing claimant shall be entitled to an award of reasonable attorneys' fees and

expenses by the Magistrate with the following limits. Attorney fees for prevailing

individual claimants shall be limited to fees and expenses up to $3,000. In addition to

these fees, counsel for the claimants shall be entitled to fees and expenses up to

$10,000 on a one time basis for the litigation of the following specific issues: statute

of limitations, proof of discrimination in promotion process, and proof of

discrimination and retaliation in discipline.

30.2   If defendant prevails, taxable costs shall be awarded, and reasonable attorneys' fees

may be sought under the *Christianburg Garment Co. v. EEOC*, 434 U.S. 412 (1978),

standard set by the Supreme Court for prevailing defendants.

## 31.   RETENTION OF JURISDICTION

31.1   The Court shall retain jurisdiction of this action for all purposes during the term of this

Decree. At any time after five (5) years from the date of entry of this Decree, and after

substantial compliance has been maintained for no less than two years, the City may

move to terminate this Decree. Any motion to terminate must detail all aspects of the

City's compliance with each provision of this Decree, supported by affidavits and

supporting documentation. Plaintiffs shall have forty-five (45) days from receipt of

the City's motion to terminate to file any objections.  The Monitor shall also have forty-five (45) days to report their findings concerning the status of the City's compliance with this Decree. The City and the Plaintiffs shall each have fifteen (15) days to respond to the Monitor's findings and to seek any further relief as might be appropriate in light of those findings.

31.2    In the event Plaintiffs object to the termination of the Decree as provided for above, the Court shall hold a hearing at which both parties may present evidence, before ruling on the City's motion to terminate. At the hearing the burden shall be on the City to demonstrate that it has fully and faithfully implemented all provisions of this Decree and maintained substantial compliance for at least two (2) years.

31.3    Should the Court determine that the City is not in substantial compliance with the terms of the Decree, the Court may enter such orders as are appropriate to bring the City into compliance with those provisions where it finds a lack of substantial compliance.

32.    **SEVERABILITY**

32.1    Upon the consideration of a motion filed pursuant to Paragraph 28.1, the Court finds the City to be in substantial compliance with specific provisions of this Decree as required by that paragraph, but not in compliance with other provisions, the Court may in its discretion enter an order dissolving the injunctions relating to that compliance while maintaining the other injunctions.

32.2    In the event any provision of this Decree is declared invalid for any reason by the Court, said finding shall not affect the remaining provisions of this Decree.

## 33.   MODIFICATIONS

33.1    No changes, modifications, or amendments of this Decree shall be effective unless they are ordered by the Court.

## 34.   DEFENSE OF THE DECREE

34.1    The parties agree to defend the provisions of the Decree.  In the event an independent action is filed, or a motion in this action or any other action is filed which challenges any aspect of this Decree, any party with knowledge of such filing, shall notify the other party.   The parties will seek removal of a matter to federal court and its consolidation with this action.

## 35.   NOTICE

35.1    All notices to the parties shall be provided as follows:

a.      Plaintiffs:

        Louis W. Bullock
        Bullock & Bullock
        320 S. Boston, Suite 718
        Tulsa, Oklahoma 74103

b.      Defendant:

        City Attorney
        Third Floor
        200 Civic Center
        Tulsa, Oklahoma 74103

**IT IS SO ORDERED!**

UNITED STATES DISTRICT JUDGE

Approved for the Plaintiff Class:

_____
Walter Busby

_____
Derrek Lewis

_____
Marvin Blades

_____
Tyrone Lynn

_____
Louis W. Bullock
Attorney for the Plaintiff Class

Approved for the City of Tulsa:

Susan Savage, Mayor

Larry Simmons
Deputy City Attorney